688 P.2d 201

Joan LEIKVOLD, Plaintiff-Appellant,

v.

VALLEY VIEW COMMUNITY HOSPI-
TAL, an Arizona corporation; Phoenix
Baptist Medical Services, an Arizona
corporation; and Andrew Allen, De-
fendants-Appellees.

No. 1 CA–CIV 5930.

Court of Appeals of Arizona,
Division 1, Department D.

June 14, 1983.

Rehearing Denied Sept. 15, 1983.

Review Granted Nov. 1, 1983.

Farrer & Becker, P.C. by Mathis Becker,
Sun City, for plaintiff-appellant.

Jones, Skelton & Hochuli by Don C. Stevens II, Phoenix, for defendants-appellees.

## OPINION

MEYERSON, Judge.

This appeal involves the rapidly changing area of employment law. We are asked to hold that in a contract of employment, indefinite as to its duration, the employee may nevertheless prove that the employer's personnel manual constitutes the terms and conditions of employment. The parties did not have a formal employment contract limiting the circumstances under which the employee could be discharged. For the reasons hereinafter stated, however, the employee is not foreclosed from proving that she could only be discharged for cause in accordance with the personnel manual. The facts in this appeal are as follows.

## I. FACTS

Plaintiff-appellant Joan Leikvold has been a registered nurse since 1954. She became the operating room supervisor at defendant-appellee Valley View Community Hospital (Valley View) in 1972 and in 1978 she was promoted to director of nursing. After holding this job for approximately one year, she learned that the operating room supervisor no longer desired to continue in that position. Because Leikvold enjoyed the field of surgery, she decided to seek a transfer from her position as director of nursing back to the position of operating room supervisor.

At about that time, defendant-appellee Andrew Allen assumed the position of chief executive officer of Valley View. Although Leikvold's request for a transfer was made before Allen moved to Valley View, he ultimately became the hospital official who acted upon the request. Leikvold and Allen had several meetings with regard to the transfer. At these meetings, Allen expressed his judgment that it was inappropriate for someone to transfer from a position of greater authority to one of lesser authority. Leikvold was ultimately informed that an advertisement had been placed in the paper for her position and that it would not be possible for her to transfer back to the operating room. She asked him if that meant that she should be looking for another job and he replied "If I were you, I would be." Leikvold subsequently withdrew her request for transfer but she was ultimately fired.

In Leikvold's personnel file, the reason given for her discharge was "insubordination." In Allen's deposition, however, he testified that the causes of her termination were (1) her request to become a subordinate after holding a management position and (2) that the operating room supervisor position was not available. There is nothing in the record to suggest that Leikvold's job performance was in any way unsatisfactory.

## II. THE PERSONNEL MANUAL

Although the parties did not execute a written contract of employment, when Leikvold was hired, and through the duration of her employment, Valley View had in effect a manual describing "administrative and personnel policies." According to her affidavit, attached to her response to Valley View's motion for summary judgment, she was given a copy of the manual when she was hired and was told that the policies contained therein were to be followed during her employment with the hospital. She stated that she was led to believe by the hospital administration that the manual was part of the employment contract between the hospital and its employees. During her tenure as the director of nursing, the manual was repeatedly referred to at department meetings as reflecting the policies which were to be followed in the case of employee termination. The manual is in loose-leaf form so that employees "can bring it up to date whenever policies are revised." The manual contains sections on wages and salaries, benefits, working conditions, job opportunities, personal problems, "important rules," and termination policies. Allen testified in his deposition that in his view the manual set forth guide-

lines only and that he was free to ignore the manual if he chose.

Leikvold contends that her discharge violated the terms of the personnel manual in several respects. First, she contends that no effort was made to help her adjust to her work situation. The manual provides that the hospital will make "every effort ... to help an employee adjust himself to his work." Second, she contends that pursuant to the terms of the manual she could only be discharged for unsatisfactory service. This is her most significant allegation. The manual provides that if any employee's work "should be considered unsatisfactory during the first three months of employment, the hospital reserves the right to discontinue his services without notice." Third, she argues that the manual provides for a right to appeal and a hearing and that these procedural rights were not afforded to her. The manual states that an employee "who feels ... aggrieved by the terms of the discharge may appeal to Administration, and will be granted a hearing."

## III. CONTENTIONS OF THE PARTIES

Leikvold filed her complaint in two counts alleging (1) that her discharge violated Valley View's personnel policies and (2) defamation. Valley View filed a motion for summary judgment contending that the employment contract between the parties was terminable at will and, in any event, Valley View complied with all administrative and personnel procedures. Valley View also argued that no defamatory statements about Leikvold were made. Judgment was entered in favor of Valley View and Leikvold brought this appeal. Leikvold appeals only the issues relating to the employment relationship and has abandoned any contention that Allen's statements were defamatory.

On appeal, Leikvold raises two issues. First, she contends that an employer's personnel manual may be part of the employ-

ment contract even in an employment relationship which is otherwise terminable at will. Second, she argues that good-faith dealing between the parties is a requirement even under an at will contract and, more particularly, the hospital may not discharge its chief supervisory nurse in an arbitrary and capricious manner. Because we agree with Leikvold's first contention, we do not reach the second issue.

## IV. LAW

■ Arizona is one of many states which follows the common law rule that either party may terminate an employment-at-will contract at any time, for any reason. *Daniel v. Magma Copper Co.*, 127 Ariz. 320, 620 P.2d 699 (Ct.App.1980); *Larsen v. Motor Supply Co.*, 117 Ariz. 507, 573 P.2d 907 (Ct.App.1977). No prior Arizona decision, however, has considered whether in an employment contract indefinite in duration and lacking express terms limiting the employer's right to terminate the relationship, the employer's personnel manual may nevertheless become part of the terms and conditions of employment.[1] Although virtually all states follow the common law rule, absolute adherence to the employment-at-will doctrine has become increasingly disfavored throughout the United States. *See generally* Olsen, Wrongful Discharge Claims Raised by At-Will Employees: A New Legal Concern for Employers, 32 Lab.L.J. 265 (1981); Comment, Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, 93 Harv.L.Rev. 1816 (1980); *Annot.*, 12 A.L.R. 4th 544 (1982). One of several exceptions which has emerged is the situation such as we have before us—where the employer has adopted a personnel manual.

For example, in *Toussaint v. Blue Cross and Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980), Toussaint was provided

1. We have held, however, that the terms of a teacher's written contract may include the rules and regulations of the school district. *Haverland v. Tempe Elementary School Dist. No. 3*, 122 Ariz. 487, 489, 595 P.2d 1032, 1034 (Ct.App. 1979). We have also held that administrative manuals may become part of a written employment contract. *Cf. Scottsdale School District v. Clark*, 20 Ariz.App. 321, 512 P.2d 853 (1973).

with a personnel manual which "reinforced the oral assurance of job security. It stated that the disciplinary procedures applied to all Blue Cross employees who had completed their probationary period and that it was the 'policy' of the company to release employees 'for just cause only.'" *Id.* at 598–99, 292 N.W.2d at 884. Toussaint had been employed by Blue Cross for five years when he was discharged; he contended that the discharge violated the Blue Cross employment policy as expressed in its personnel manual. A jury found in favor of Toussaint, but the court of appeals reversed. The Michigan Supreme Court held as follows:

> Although Toussaint's employment was for an indefinite term, the jury could find that the relationship was not terminable at the will of Blue Cross. Blue Cross had established a company policy to discharge for just cause only, pursuant to certain procedures, had made that policy known to Toussaint, and thereby had committed itself to discharge him only for just cause in compliance with the procedures. There were, thus, on this separate basis alone, special circumstances sufficient to overcome the presumptive construction that the contract was terminable at will.
>
> We hold that employer statements of policy, such as the Blue Cross Supervisory Manual and Guidelines, can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee ....

*Id.* at 614–15, 292 N.W.2d at 892.

In *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or. 651, 576 P.2d 356 (1978), the Oregon Supreme Court reversed a summary judgment entered in favor of the employer in an action for wrongful discharge. The employee contended that she was discharged in contravention of the company's policy as contained in its personnel handbook which provided that termination would be for unsatisfactory performance. The court held that if the case "were submitted to a jury, it could reasonably infer from the facts stated in plaintiff's affidavit, when taken as a whole, that these statements in the handbook were intended and considered by both parties to be a part of the terms of plaintiff's original contract of employment." *Id.* at 656, 576 P.2d at 359. *See, e.g., Wagner v. Sperry Univac, Division of Sperry Rand Corp.,* 458 F.Supp. 505, 519–21 (E.D.Pa.1978); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.Sup.Ct.1983); *Piacitelli v. Southern Utah State College,* 636 P.2d 1063 (Utah 1981); *contra Mau v. Omaha National Bank,* 207 Neb. 308, 299 N.W.2d 147 (1980).

Two recent decisions are particularly persuasive. New York's highest court recently recognized that an at-will employment contract may be subject to the terms of the employer's personnel policies. *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y. S.2d 193, 443 N.E.2d 441 (1982). Weiner left a position with another employer to join McGraw-Hill in reliance upon the company policy not to terminate employees without "just cause." Like Ms. Leikvold, while employed at McGraw-Hill, he rejected other offers of employment. In addition, according to Weiner's affidavit, "on several occasions when he recommended that certain of his subordinates be dismissed, he was instructed by his supervisors to proceed in strict compliance with the handbook and policy manuals...." *Id.* at 465–66, 457 N.Y.S.2d at 197, 443 N.E.2d at 445. After eight years on the job, "he suddenly found himself discharged for 'lack of application.'" *Id.* at 461, 457 N.Y.S.2d at 195, 443 N.E.2d at 443.

Relying upon general principles of contract law, the court concluded that an "agreement on the part of an employer not to dismiss an employee except for 'good and sufficient cause only' ... does not create an ineluctable employment at will." *Id.* Based upon the circumstances of his employment, the court concluded that Weiner was entitled to take his case to the jury. The court framed the issue this way: "Was [the employer] bound to a promise not to

discharge [Weiner] without just and sufficient cause ...." *Id.*

■ In a case quite similar to the one before us, the California Court of Appeals held that the trial court incorrectly granted a directed verdict against a nurse suing for wrongful discharge. *Walker v. Northern San Diego County Hospital District*, 135 Cal.App.3d 896, 185 Cal.Rptr. 617 (1982). Walker was employed as the head nurse of the hospital's central supply section. She brought suit contending she was wrongfully discharged without cause and without a hearing as provided for in the hospital employment handbook. The hospital contended that the contract for an indefinite period was terminable at the will of either party.

Although the relevant section of the handbook was amended several times, at the time of Walker's discharge the manual stated: "If your overall performance is unsatisfactory, the Hospital reserves the right to terminate employment at any time within the probationary period."[2] *Id.* at 903, 185 Cal.Rptr. at 621. From this the court concluded:

> This language implies once an employee successfully completes the probationary period, [the hospital] no longer has an unfettered right to discharge the employee.

*Id.* The court went on to hold that the provisions of the handbook, "clearly constitute[d] the terms of employment." *Id.* The court held that the trier of fact "had the duty to determine the existence or nonexistence of an express or an implied in fact promise for some form of continued employment absent cause for firing." *Id.* at 905, 185 Cal.Rptr. at 622.

We find no inconsistency between our prior holdings that an employment relationship for an indefinite term is one at will, and the foregoing decisions which permit an employee to prove that the employer's personnel manual became part of the contract of employment. These decisions properly recognize that the employer's representation that certain policies will be followed creates a reliance on the part of the employees and an expectation that such policies will be uniformly and fairly enforced.

The adoption of such policies is not without a significant benefit to the employer. The employer "secures an orderly, cooperative and loyal work force ...." *Toussaint*, 408 Mich. at 613, 292 N.W.2d at 892. Indeed, Ms. Leikvold stated in her affidavit that she remained at Valley View and "passed up other opportunities to work because of the stability of her employment ...." It is, of course, hornbook law that a benefit to the promisor is sufficient consideration to support a contract. *E.g., Mustang Equipment, Inc. v. Welch*, 115 Ariz. 206, 564 P.2d 895 (1977); *McGrath v. Bill Johnston Golf Properties, Inc.*, 13 Ariz. App. 49, 474 P.2d 56 (1970).

■ Under general contract principles, a contract need not be expressly stated but may be implied by the promisor's words or conduct in light of surrounding circumstances. *See Smith v. Neely*, 93 Ariz. 291, 294, 380 P.2d 148, 150 (1963); *see generally* 3 A. Corbin, Corbin on Contracts §§ 561–72A (1960). Here, we have not only Valley View's words and conduct, but an actual writing which indicates its intentions. By establishing these personnel procedures, Valley View encourages its employees to rely upon them, not only in carrying out their jobs, but also in accepting employment in the first instance.

■ Thus, we hold that in an employment relationship of indefinite duration, an employer's personnel manual or handbook may constitute the terms of the employment contract. And, although there is no formal, written agreement limiting the employer's right to discharge an employee, limitations may be found to exist under the terms of a personnel manual. We do not suggest that a personnel manual will, under all circumstances, become part of the

---

**2.** Valley View's policy is almost identical. "If the employee's work, however, should be considered unsatisfactory during the first three months of employment, the hospital reserves the right to discontinue his services without notice."

contract of employment. This issue must necessarily be decided on a case-by-case basis.

Valley View argues that, in any event, it complied with the provisions of its personnel manual in discharging Ms. Leikvold. The hospital contends that it did not violate the section of the manual which provides that "every effort is made to help an employee adjust himself to his work" [3] because Ms. Leikvold never asked for any counseling or assistance to help her adjust to her position as director of nursing. The hospital further argues that the manual affords no right to appeal the fact of discharge, but is rather limited to the "terms" of discharge.

As to the most crucial issue, whether Leikvold could be terminated without cause, Valley View contends that there is nothing in the manual which "indicates or gives any inference that the employee can only be terminated for unsatisfactory service ...." But as explained above, the operative language in Valley View's manual is quite similar to the handbook in *Walker* where a requirement of cause for termination was found to exist.

■ Because the primary basis of Valley View's motion for summary judgment was its argument that the employment-at-will doctrine precluded Leikvold's claim, we cannot determine whether the trial court attempted to interpret these provisions of the employment manual. The interpretation of the provisions of the manual is a question of law for the trial court. It will be free to consider extrinsic evidence if it finds the manual to be ambiguous. Once the "meaning" of the language of the manual is established, it becomes a question of fact whether Valley View complied.

For the foregoing reasons, the summary judgment entered in favor of Valley View is reversed and this matter is remanded to

the trial court for further proceedings consistent with this opinion.

EUBANK, Acting P.J., concurs.

FROEB, Judge, dissenting:

Even if the personnel handbook is "part of appellant's employment contract," appellant has made no showing in this case that it was violated. Appellant argues that section nine was not observed, which provides, "every effort is made to help an employee adjust himself to his work." This is not a promise reasonably susceptible of enforcement. Next, appellant argues that her termination was not based on one of the reasons for termination set forth in the handbook, although there is nothing to indicate the grounds set forth are exclusive. Last, appellant contends the handbook gave her the right to a dismissal hearing which was denied, yet the language used would allow a challenge only to the "terms" but not the propriety of dismissal. In my opinion, there is no genuine issue of material fact presented here which would justify a jury trial over whether appellee breached terms of employment set forth in the employment manual. I would affirm the judgment.

---

3. The handbook in *Weiner v. McGraw-Hill, Inc.,* contained a similar provision. The court held that the employee was entitled to have the jury determine whether the employer complied with the provision.